Elizabeth D. Friedman, Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
*e-mail*:  friedmaned@muni.org
(907) 343-4545
(907) 343-4550 facsimile

Attorney for Defendants
Municipality of Anchorage
Andrew Cottle
Gregory Witte
Kenneth McCoy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PATRICK L. SHORTY                               ) | |
|              Plaintiff,                            ) | |
| vs.                                                            ) | Case No. 3:05-cv-00237-TMB |
| MUNICIPALITY OF ANCHORAGE, OFFICER   ) ANDREW COTTLE, INDIVIDUALLY AND IN  ) HIS CAPACITYAS AN ANCHORAGE POLICE  ) OFFICER, OFFICER WITTE, INDIVIDUALLY  ) AND IN HIS CAPACITY AS AN ANCHORAGE ) POLICE OFFICER, KENNETH D. MCCOY,      ) INDIVIDUALLY AND IN HIS CAPACITY AS   ) AN ANCHORAGE POLICE OFFICER              ) | |
|              Defendants.                        ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

      Defendants Municipality of Anchorage, Officer Andrew Cottle, Officer Gregory Witte and Officer Kenneth D. McCoy have moved this court for summary judgment on all counts pursuant to qualified immunity and collateral estoppel.

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 1 of 17*

I.   **THE FACTS SHOW THAT THE PLAINTIFF WAS LAWFULLY ARRESTED AND SUBSEQUENTLY CONVICTED FOR FIRST DEGREE SEXUAL ASSAULT, RESISTING ARREST, ASSAULT, AND MAKING A FALSE POLICE REPORT.**

   A.   **Patrick Shorty was Arrested on July 26, 2003 for the Rape and Beating of a Teenage Girl.**

On July 8, 2003, a disheveled and bloodied teenage girl flagged down Anchorage Police Officer Torres in the Fairview neighborhood of Anchorage. Exhibit 1 (at Tr. 55-6, 60). She told Officer Torres that two men had raped and beaten her and a third had served as a lookout. *Id.* (at Tr. 55-6). She pointed out three fleeing suspects, one of whom was subsequently taken into custody. *Id.* The suspect, Thomas Leichty, admitted to being at the scene of the rape/assault and provided information on one of the other men, later identified as Patrick Shorty. Detective Kenneth McCoy was assigned the case as the investigating detective. Exhibit 2 (Affidavit of Kenneth D. McCoy). Detective McCoy obtained a search warrant for Shorty's DNA. *Id.* at 3. Detective. McCoy had all APD officers informed to be on the look out for Shorty and put out notices to the public to call in to report Shorty. *Id.*

On July 26, 2003, APD dispatch received a call from a citizen that Patrick Shorty was in the vicinity of 10th and Ingra Street in Anchorage. Exhibit 1 (at Tr. 6). Officers Witte and Cottle responded. *Id.* (at Tr. 6, 103).

Officer Witte arrived first on the scene followed shortly by Officer Cottle. *Id.* (at Tr. 6). Officer Witte asked Shorty his name, and Shorty gave the false name, "Harold Gregory." *Id.* (at Tr. 103-04). Shorty was then asked for his age and date of birth. *Id.*

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 2 of 17*

When Shorty responded with conflicting information, Officer Witte told Shorty placed his hand on Shorty's arm. *Id*. (at Tr. 105). Shorty attempted to distract Officer Cottle by handing him his coat, which Officer Cottle refused. *Id*. When Officer Cottle moved to restrain Shorty's other arm, Shorty commenced to fight with the officers. *Id*. (at Tr. 105-06). The two officers were unable to subdue Shorty until a third officer, Ritala, arrived and was able to handcuff Shorty. *Id*. (at Tr. 107). Officer Cottle was injured in the fight and received medical care for an injured knee. *Id*. (at Tr. 10-11).

During the fight, Officer Cottle used a vascular restraint on Shorty. Officer Cottle testified regarding the circumstances of the use of the vascular restraint at an evidentiary hearing on April 16, 2004:

> …the top of Mr. Shorty's head and I attempted to cr--control him and control his head, as Officer Witte attempted to control his hands. He continued to struggle very violently, turning and pulling his body away, and he was actually starting to pull away from Officer Witte and I, as well as being able to stand up. At that time I continued to yell at him to stop resisting, and I applied a vascular restraint.
>
> Q   What is a vascular restraint?
>
> A   Vascular restraint is using the bicep/deltoid area of one side of your arm and the wrist and forearm of your other side of your arm and applying pressure to both sides of a suspect's neck to gain their compliance.
>
> Q   And what happened as you were applying the vascular restraint?
>
> A   He continued to resist. I continued to apply the vascular restraint. There's -- there's three -- there's three levels. You basically have rear neck lock of a vascular restraint and you have compliance at that point, just verbal compliance. You have mechanical compressions if they don't comply until you have conscious compliance, and a third stage is that you continue complying until you have unconscious compliance. I can -- I was not getting compliance. I continued to

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 3 of 17*

> apply the vascular restraint. I eventually felt him go slightly limp and heard Officer Witte advise me that he was out.
>
> Q   And.....
>
> A   At that point I left my arms in place, but I ceased complying mechanical compressions.
>
> Q   And what happened after you ceased the compressions?
>
> A   within several seconds I felt the tension in the defendant's body increase and he began to struggle violently again. At that time I yelled at him again to stop resisting. Officer Witte had only been able to grab the defendant's right arm, and his left arm was still under him free. As he continued to fight more, and again I became fearful that he was actually going to be able to beat Officer Witte and I, basically, he was going to be able to struggle, get free and -- and get off the ground, I delivered several knee strikes to his midsection while I continued to yell at him to stop resisting.

Exhibit 1 (at Tr. 9-10).

Among the charges against Patrick Shorty are three directly bearing on this litigation: Resisting Arrest (AS 11.56.700(A)(1)); Making a False Police Report (AS 11.56.800(A)(1)); and Assault in the Fourth Degree (AS 11 41.230(A)(1)). Exhibit 3. The charge of Assault in the Fourth Degree concerned Officer Cottle who was injured during Shorty's violent resistance to the arrest. Shorty was also charged with two counts of first degree sexual assault (AS 11.41.410(A)(1).

**B.   Patrick Shorty was found Guilty on All Counts on December 5, 2006.**

Patrick Shorty and his co-defendant, Thomas Leichty, were tried in Anchorage Superior court commencing on November 14, 2006. On December 5, 2006 the jury returned a verdict of guilty on all counts. Exhibit 4. After the jury rendered the

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 4 of 17*

verdicts, Shorty's counsel moved for a Judgment of Acquittal (Alaska Rule of Criminal Procedure 29) concerning the assault and resisting arrest charges. The court granted a hearing on the motion which was held on December 12, 2006. Exhibits 5, 6. The court denied the motion and found that "Shorty went bonkers and took them [Officers Cottle and Witte] down" and that the force was reasonable under the circumstances. Exhibit 5 at 3 (Log notes at 4:22:13 p.m.).

### C. Shorty's Medical Records Reveal that he was Not Injured.

#### 1. Patrick Shorty Refused Medical Assistance After the Arrest.

Patrick Shorty provided no discovery to the Defendants in support of his allegation that he was injured during the arrest. Exhibit 7. Officer Witte testified at the 2004 Evidentiary Hearing that after Shorty was taken into custody the paramedics were called. Exhibit 1 (at Tr. 107). Officer Witte asked Shorty if he wanted medical attention. *Id*. Shorty refused, and Officer Witte called off the paramedic response. *Id*.

#### 2. Shorty's Medical Records from Cook Inlet Pretrial Show that he did not have injuries at the time of his arrest.

The Municipality conducted discovery and obtained Shorty's medical records from Cook Inlet Pretrial ("CIPT"), the Alaska Native Medical Center, and from other medical providers. The CIPT records show that Shorty received no medical treatment when he first arrived in the jail, but that subsequently he received routine medical, dental and vision services. Exhibit 7.

*Shorty v. Municipality of Anchorage et. al*, 3:05-cv-00237-TMB
*Defendants' Memorandum in Support of Summary Judgment*
Page 5 of 17

### D. Detective McCoy Questioned Shorty Prior to Transporting Him to Jail.

After arresting Shorty, the officers transported him to the Anchorage Police Station where Detective McCoy, the case officer on the sexual assault investigation, questioned him about the rape. Exhibit 2. Shorty had defecated in his pants during the altercation with Officers Witte and Cottle. Exhibit 1 (at Tr. 131). Officer Witte who transported Shorty to police headquarters testified that because of the violent fight with Shorty he was uncomfortable removing the feces from Shorty's pants:

> Well, there was a couple of different factors that went into this one. One, the pants that he was wearing were like the military style, BDU pants, the kinds that ar tied at the bottoms around the ankles?
> . . .
> And it wasn't possible due to the fact that I'd just got done fighting with him very violently for quite awhile that I felt comfortable going down and untying and putting my head and my body down by his ankles to untie this rope to get his pants open so this poop could fall out.

*Id*.

Officer Witte testified that there were no secure facilities for Shorty to shower and clean up at the police headquarters. *Id*. (at Tr. 131-32). The only shower facilities were those used by uniformed and nonsworn police staff. *Id*.

During the course of the interview with Detective McCoy, Shorty did not request to be cleaned up prior to answering the questions. Exhibit 2 at 8; Exhibit 8.

In the criminal case, Shorty's counsel moved to quash his statements because the interrogation had taken place prior to allowing him to clean up. The superior court, relying on *Beavers v. State*, 998 P.2d 1040 (Alaska 2000) found that interrogating Shorty

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 6 of 17*

while he was sitting in excrement "shocked the conscience" and suppressed the statements. While suppressing the statement, Judge Wolverton also found that

> And, you know, in *Beavers*, I'm quoting, they say among circumstances -- among the circumstances relevant to the court's determination of voluntariness are the age, mentality and prior criminal experience of the accused, the length and intensity and frequency of interrogation -- and I'm focusing on this part -- the existence of physical deprivation or mistreatment. And the comments were, well, after we get done talking we -- we'll try to get you cleaned up, and I find that -- I understand under the circumstances that what -- he [Officer Witte] was trying to arrange to get Mr. Shorty cleaned up, and **I don't think it was on the behalf of Detective McCoy or Officer Witte sort of malevolent or anything like that**. I do think it does sort of shock the conscience -- shocks my conscience to say, well, we're going to talk to you now, and then beyond that he sat there for something like 34 minutes after the interview in his own excrement, so I'm going to grant the motion to suppress.

Exhibit 1 (at Tr. 153-54.) (*Emphasis added*).

The video tape and transcript of the interview between Detective McCoy and Shorty shows that Detective McCoy was polite and made no threatening remarks throughout the interview process which lasted less than a half hour. Exhibit 1 (at Tr. 138); Exhibit 9. Detective McCoy's affidavit states that he was concerned with obtaining a statement from Shorty prior to booking him into the jail and was also seeking information on the identity of the third individual involved in the sexual assault. Exhibit 2 at ¶ 7. The Anchorage Police had interviewed Shorty's co-defendant, Thomas Leichty, but Leichty had not been able to identify the third individual. Therefore, Shorty was the key to obtaining the information on the third assailant. *Id.* Shorty was Mirandized and agreed to speak with Detective McCoy. *Id.* at ¶ 5. Shorty did not request to get cleaned up until after the interview concluded. Exhibit 1 (at Tr. 138). Detective McCoy testified

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 7 of 17*

that he shortened the procedures at the police headquarters – he did not fingerprint, photograph, etc. – in light of the hygiene concerns. *Id.* (at Tr. 139).

II. **SUMMARY JUDGMENT IS REQUIRED WHERE THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND THE MOVING PARTY SHOWS THAT IT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW**.

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). Summary judgment is appropriate only when, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact with respect to the claims. *Tayborn v. City and County of San Francisco*, 341 F.3d 957, 960 (9th Cir. 2003). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 325; *Anderson*, 477 U.S. at 248.

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 8 of 17*

In addition to showing that there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323.

The events which are the subject of this lawsuit occurred during Shorty's arrest. At trial, Shorty was convicted of resisting arrest, assaulting a police officer, and providing false information to the police. No material facts are in dispute and the Municipal defendants are entitled to summary judgment under qualified immunity and collateral estoppel.

### III. COLLATERAL ESTOPPEL REQUIRES DISMISSAL OF THE PLAINTIFF'S COMMON LAW ASSAULT AND RESPONDEAT SUPERIOR CLAIMS.

Shorty's convictions for assaulting a police officer and resisting arrest collaterally estopps him from re-litigating the issue of whether the actions of Officers Witte and Cottle during the course of the arrest constituted an assault. *Jones v. Bates*, 127 F.3d 839, 848 (9th Cir.1997) ("[C]ollateral estoppel bars parties from relitigating issues of fact or law that have already been fully and fairly litigated in prior proceedings."). "We apply state law in determining the preclusive effect of a prior state court adjudication, 28 U.S.C. § 1738…." *Jones v. Bates*, 127 F.3d 839, 848 (9th Cir.1997) citing In re Russell, 76 F.3d 242, 244 (9th Cir.1996). Under Alaska case law a ". . . civil litigant is collaterally

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 9 of 17*

estopped from relitigating any element of a criminal charge of which he stands convicted." *Haynes v. McComb*, 2006 WL 3334172, 1 (Alaska 2006) *citing Burcina v. City of Ketchikan*, 902 P.2d 817, 822 (Alaska 1995).

Shorty was convicted for resisting arrest and assault on a police officer: these convictions preclude Shorty from relitigating his First, Second, Fourth, Fifth, and Eighth causes of action in which he claims that the officers assaulted him. Plaintiff's respondeat superior/negligent training or supervision counts fail because these are premised elements for which Shorty has been convicted and cannot be relitigated.

### IV. QUALIFIED IMMUNITY SHIELDS THE OFFICERS FROM CIVIL LIABILITY IN THIS MATTER.

Under the doctrine of qualified immunity, a government official performing a discretionary function is shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) *quoting Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed2d 411 (1985). Qualified immunity rulings should be made early in the proceedings so that the cost and expenses of trial may be avoided. *Saucier,* 533 U.S. at 200.

When a court evaluates a claim of qualified immunity, the court first considers the threshold question of whether the facts, "taken in the light most favorable to the party

*Shorty v. Municipality of Anchorage et. al*, 3:05-cv-00237-TMB
*Defendants' Memorandum in Support of Summary Judgment*
Page 10 of 17

asserting the injury, show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. In the present case, as in *Saucier*, the Plaintiff claims use of excessive force in effecting the arrest. However, unlike *Saucier* where the Plaintiff was detained for a brief time and then released, Mr. Shorty was arrested and subsequently convicted of resisting arrest, assaulting an officer in the course of the arrest, and providing false information to the officers. Oficers Witte and Cottle are entitled to qualified immunity as Shorty's convictions verifies that the officers were the victims, not perpetrators of the assault.

With respect to Detective McCoy, Plaintiff's Third Cause of Action claims that Detective McCoy "refused to let him clean up" and subjected him to interrogation which he claims was "abusive, coercive, humiliating." Judge Wolverton, while suppressing Shorty's statements, did not make findings which support these claims. Nor does the factual record of Shorty's interrogation support these claims. Exhibit 8, 9. Shorty never requested that he be allowed to clean up prior to speaking with Detective McCoy. Exhibit 1 (Tr. 138); Exhibit 2 at ¶ 8; Exhibits 8, 9.

Assuming arguendo, that this court finds that Detective McCoy's custodial interrogation was a constitutional violation, *Saucier* requires further inquiry. If a constitutional violation occurred, the second inquiry is whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right. *Saucier*, 533 at 202. This requires an assessment of whether "it would be clear to a reasonable officer that his conduct was

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 11 of 17*

unlawful in the situation he confronted." *Id. citing Wilson v. Layne*, 526 U.S. 603, 615, 119 S. Ct. 1692, 143 L.Ed. 818 (1999). To survive the motion for qualified immunity, Shorty must state a violation of a constitutional right, and that right must have been clearly established at the time when Detective McCoy interrogated him.

> [Q]ualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S., at 206, 121 S.Ct. 2151. For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell [v. Forsyth*, 472 U.S. 511,] 535, n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411; but it is to say that **in the light of pre-existing law the unlawfulness must be apparent**.' *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

*Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515 (U.S. 2002) (*Emphasis added*). In *Hope v. Pelzer, supra*, the Supreme Court held that qualified immunity did not protect a corrections officer who was alleged to have subjected an inmate to cruel and unusual punishment by handcuffing the inmate to hitching post and leaving him exposed to the sun for seven hours with minimal water or bathroom breaks. Similarly, in *Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003) the Ninth Circuit found no qualified immunity where the defendant was alleged to have been "brutally and incessantly questioned . . . after he had been shot in the face, back, and leg and would go on to suffer blindness and partial paralysis, and interfered with his medical treatment while he was "screaming in pain ••• and going in and out of consciousness." The court found "a clearly established right, fundamental to ordered liberty, is freedom from coercive police

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 12 of 17*

interrogation" and that if proven it would be "impossible not to be shocked by Sergeant Chavez's actions." *Id*.

These cases stand in sharp contrast to Mr. Shorty who was interrogated for less than an hour, was not threatened, and suffered only the minor discomfort of fouled clothes.

Judge Wolverton relied on *Beavers v. State*, 998 P.2d 1040 (Alaska 2000) to suppress Shorty's statements. *Beavers* does not create a "clearly established right" applicable to the facts of the present case. *Beavers* involved the **noncustodial** interrogation of a 16 year old juvenile, Timothy Beavers. *Id*. at 1041-42. The interrogation took place in a patrol car and concerned Beavers participation in a series of robberies. *Id*. During the course of the interrogation, one of the Troopers said to Beavers "[b]ut if you're, if you try and hide it from me you're really going to get hammered." *Id*. at 1042. The superior court suppressed Beaver's statements on the grounds that the confession involuntary. The superior court found that the trooper "had excessively pressured Beavers and essentially indicated to him that he lacked any choice but to confess. As a result, the court concluded that Beavers's will had been overcome and that his confession was coerced." *Id.* at 1043. The superior court dismissed the indictment and the state appealed. The court of appeals found the confession voluntary and reinstated it. The case was then appealed to the Alaska Supreme Court. Reversing the Court of Appeals decision, the Alaska Supreme Court relied on the Ninth Circuit's decision in *United States v. Harrison*, 34 F.3d 886 (9th Cir. 1994). *Beavers*, 998 P.2d at

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 13 of 17*

1046-47.  Following *Harrison*, the Alaska Court drew the distinction between a law enforcement officer's promises of leniency and threats of harsher treatment if the suspect fails to cooperate.  *Id*.  The latter is forbidden because it suggests to a suspect that the exercise of the right to remain silent may result in harsher treatment by a court or prosecutor.  *Id*.  The Court concluded that "threat-induced confessions should be considered presumptively involuntary absent evidence affirmatively indicating that the suspect's will was not overcome by the threats." *Id*. at 1048.

The principle elucidated in *Beavers* – that an officer cannot use threats of harsher treatment to induce a confession – is a constitutional right that a reasonable officer could be expected to understand.  However, to expect the "reasonable officer" to extrapolate from *Beavers* that interrogating a rape suspect while the suspect is sitting fouled garments is unconstitutional is not an extrapolation which a reasonable officer should be expected to make.  Detective McCoy never threatened Shorty that if he didn't confess that he would have to remain in his fouled garments until he confessed.  Exhibit 8, 9.  In fact, as the transcript shows, Shorty did **not** confess to the rape.  Exhibit 8.  Moreover, the conduct which Judge Wolverton found "shocked the conscience" was that Shorty "sat there for something like 34 minutes after the interview in his own excrement." Exhibit 1 (at Tr.154).  Thus in Shorty's case, Judge Wolverton based the suppression on police conduct which occurred, at least in part, **after** the interrogation.

In *State v. Garrison*, 128 P.3d 741, 749 (Alaska App. 2006), the Court of Appeals reversed Judge Wolverton on this same issue.  In *Garrison* the suspect's key admission –

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 14 of 17*

that he had taken a handgun from the murder victim – was made prior to the police ostensibly threatening him with harsher treatment. *Id*. The Court of Appeals examined the police interrogation and found that none of their statements were threats under *Beavers*. *Id*. at 749-50.

What constitutes "threats of harsher treatment" or "coercive interrogation" under *Beavers* was not clear at the time Detective McCoy interrogated Shorty. Judge Wolverton's application of *Beavers* in *Garrison* was roughly contemporaneous with his ruling in Shorty*'s* case. Although the State did not appeal the Shorty decision, there are parallels which suggest a similar misapplication of *Beavers*. Regardless of whether the suppression was justified under *Beavers*, the fact remains that the ruling in *Beavers* was evidently not clear to the judiciary. Thus, the "reasonable officer" could not be expected to know that it was ostensibly unconstitutional to interrogate a suspect prior to allowing him to clean up. Other Alaska cases regarding coercive interrogation techniques or harsh treatment fail to provide guidance directly applicable to the facts in Shorty's case. *See*, e.g. *State v. Rivers*,--- P.3d ----, 2006 WL 3114392 (Alaska App. 2006); *Cole v. State*, 923 P.2d 820 (Alaska App. 1996); *Halberg v. State*, 903 P.2d 1090 (Alaska App. 1995).

Thus Detective McCoy's interrogation of Patrick Shorty did not violate a constitutional or statutory right of which a reasonable person should have known. Neither the Alaska cases or United States Supreme Court cases would show to Detective McCoy that his treatment of Patrick Shorty was violative of Shorty's constitutional or statutory rights.

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 15 of 17*

## CONCLUSION

The doctrines of collateral estoppel and qualified immunity support the grant of summary judgment in this case. Patrick Shorty was convicted of assault and resisting arrest for the same events on which his civil claims rest. Shorty cannot relitigate the facts which form the elements of his conviction. The doctrine of qualified immunity protects the actions of the officers both at the scene of the arrest and the subsequent interrogation. The uncontested facts show that the officers did not violate any constitutional right of which a reasonable officer should have been aware. The Municipal defendants respectfully request this court to grant summary judgment on all counts.

DATED this 22nd day of December, 2006.

JAMES N. REEVES
MUNICIPAL ATTORNEY


/s/ Elizabeth D. Friedman
Elizabeth D. Friedman,
Assistant Municipal Attorney
P.O. Box 196650
Anchorage, Alaska 99519-6650
*e-mail*: uslit@muni.org
Telephone (907) 343-4545
Facsimile (907) 343-4550
Alaska Bar No. 9306027

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 16 of 17*

The undersigned hereby certifies that on 12/22/06 a true and correct copy of the *Defendants' Motion for Summary Judgment, Memorandum in Support, and Exhibits* was served on:

>Patrick L. Shorty,
>c/o 425 G St. Ste 600,
>Anchorage, Alaska  99501

by first class regular mail, if noted above, or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

 s/ Cathi Russell
Cathi Russell, Legal Secretary
Municipal Attorney's Office

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Defendants' Memorandum in Support of Summary Judgment*
*Page 17 of 17*