IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PATRICK L. SHORTY                              )<br>                                                            )<br>      Plaintiff,                                      )<br>                                                            )<br>vs.                                                     )<br>                                                            )<br>MUNICIPALITY OF ANCHORAGE, OFFICER  )<br>ANDREW COTTLE, INDIVIDUALLY AND IN )<br>HIS CAPACITYAS AN ANCHORAGE POLICE )<br>OFFICER, OFFICER WITTE, INDIVIDUALLY )<br>AND IN HIS CAPACITY AS AN ANCHORAGE )<br>POLICE OFFICER, KENNETH D. MCCOY,    )<br>INDIVIDUALLY AND IN HIS CAPACITY AS   )<br>AN ANCHORAGE POLICE OFFICER            )<br>                                                            )<br>      Defendants.                                 )<br>_____) | Case No. 3:05-cv-00237-TMB |

### AFFIDAVIT OF DETECTIVE KENNETH McCOY IN SUPPORT OF MUNICIPAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

STATE OF ALASKA                   )
                                               ) ss
THIRD JUDICIAL DISTRICT      )

Detective Kenneth McCoy being duly sworn on oath, hereby deposes and states:

1.   I am a resident of the State of Alaska and am employed as a detective in the Sexual Assault Unit of the Anchorage Police Department. I have been a police officer with the Anchorage Police Department for over 12 years.

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Affidavit of Ken McCoy in Support of Defendants' Motion for Summary Judgment*
*Page 1 of 4*

Exhibit 2
Pg 1 of 4

2. I was the case officer assigned to the investigation of the sexual assault of B.A. in 2003. In the course of my investigation, I identified Patrick Shorty as one of the suspects in the sexual assault.

3. Patrick Shorty had no fixed Anchorage address at the time of my investigation. I had information that he frequented the Fairview neighborhood where the assault had taken place. I had posters circulated in Fairview that the police were looking for Mr. Shorty as a rape suspect and asking citizens to call APD if they saw him. I briefed patrol officers to be on the alert for him and to bring him in to APD headquarters for questioning. I also obtained a warrant for Patrick Shorty's DNA.

4. On July 26, 2003, I was not on shift but received a call at home that other officers had located Patrick Shorty and were transporting him the APD headquarters. I arrived at APD at approximately 1800 hours and proceeded to interview Patrick Shorty who was in an interview room. Before interviewing Mr. Shorty, I spoke with Officer Witte who briefed me on what had taken place during the arrest.

5. I administered Miranda warnings to Mr. Shorty, and he agreed to speak with me.

6. I was aware that Mr. Shorty had been in an altercation with the arresting officers and that in the course of the fight he had defecated on himself. Mr. Shorty had some dirt or gravel on his face, but otherwise did not appear to be hurt. During the interview, he did not complain about being in pain or being uncomfortable.

7. I was aware that there were no secure facilities at APD in which a prisoner could shower. In light of the seriousness of the offense Shorty was charged with and the effort

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Affidavit of Ken McCoy in Support of Defendants' Motion for Summary Judgment*
*Page 2 of 4*

Exhibit 2
Pg 2 of 4

he had made to elude capture, I decided that the prudent approach would be to interview him prior to transporting him to the jail. I was especially concerned with obtaining an interview because we did not know the identity of the third individual involved in the rape. Thomas Leichty, the suspect taken into custody at the scene, had provided information on Shorty but had not known the identity of the third individual. I thought it was critical to solving this crime to ask Shorty for information on the third suspect.

8. I interviewed Shorty for less than ½ hour. During the course of the interview, he responded to my questions and did not indicate that he was uncomfortable or in pain. He never asked to be allowed to clean up prior to speaking with me. As the video tape of my interview with Shorty indicates, I always spoke to Shorty in a calm, polite manner. I never raised my voice or threatened him.

9. Because of the fact that Shorty was in fouled clothes, I decided to shorten the proceedings at APD headquarters so that he could be arraigned and transported to the jail in the most expeditious way. Usually, I would have the suspect finger-printed, photographed, and even take the DNA sample prior to arraignment and jail. In this case, I went back to the jail and obtained the DNA after Shorty had had the opportunity to clean up.

10. I was quite surprised when Judge Wolverton suppressed Shorty's statements because I had interviewed him before he had been cleaned up. It did not appear to me that the dirty clothes played any role in whether Shorty spoke to me. In fact, Shorty did not confess to the rape during our interview. I told Shorty that he would be able to get

*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Affidavit of Ken McCoy in Support of Defendants' Motion for Summary Judgment*
*Page 3 of 4*

Exhibit 2
Pg 3 of 4

cleaned up after we spoke, I did not intend this as a threat or coercion. I did not say to him anything to imply that he would be sitting indefinitely in dirty clothes if he didn't speak to me. To the contrary, I made every effort to conduct the interview as quickly as possible. When it became clear to me that Shorty did not intend to make a confession, I terminated the interview.

11. As part of my training, I have taken course work in interrogation techniques. I am aware that one cannot use physical deprivation or coercive techniques to obtain a confession as such methods would violate a suspect's constitutional rights. However, I was not aware of any judicial decision or statute which would make it unconstitutional for me to do a half hour interview with a suspect who was wearing fouled clothes and who was otherwise not exhibiting pain or explicitly asking to get cleaned up prior to speaking with me.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Detective Kenneth McCoy

SUBSCRIBED and SWORN TO before me this _19_ day of _Dec_, 2006.

_____
Notary Public in and for Alaska
My Commission Expires: 4/12/2007



*Shorty v. Municipality of Anchorage et. al, 3:05-cv-00237-TMB*
*Affidavit of Ken McCoy in Support of Defendants' Motion for Summary Judgment*
*Page 4 of 4*

Exhibit 2
Pg 4 of 4