IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PATRICK L. SHORTY,<br><br>        Plaintiff,<br><br>vs.<br><br>MUNICIPALITY OF ANCHORAGE,<br>et al.<br><br>        Defendants. | Case No. 3:05-cv-00237-TMB<br><br>ORDER GRANTING<br><u>SUMMARY JUDGMENT</u> |

### I. MOTION PRESENTED

On July 26, 2005, Patrick L. Shorty, a self-represented state prisoner, filed a civil rights lawsuit in state court, which was removed by the defendants to federal court on October 5, 2005.[1] The defendants filed a motion for summary judgment, to which Mr. Shorty was ordered to file an opposition on or before May 24, 2007.[2] Instead, after that time had run, Mr. Shorty filed an interlocutory appeal (which he

---

[1] *See* Docket No. 1.

[2] *See* Docket Nos. 47-51, 55-59.

signed and dated May 27, 2007),[3] of the Court's denial of his motion to stay this case until the completion of his criminal trial.[4]

Mr. Shorty's interlocutory appeal has been dismissed by the Court of Appeals.[5] However, the public record shows that his state trial had been completed *before* the filing of the interlocutory appeal.[6] The Court nevertheless gave Mr. Shorty additional time after the dismissal of his interlocutory appeal, until February 29, 2008, in which to file a response.[7] To date, however, Mr. Shorty has filed no response to the summary judgment motion. Therefore, the Court will decide the motion without his input.[8] Oral argument was not requested and would not assist the court.

---

[3] *See Faile v. Upjohn Co.*, 988 F.2d 985, 988 (9th Cir. 1993) (an incarcerated pro se litigant completes "service" under Rule 5(b) of the Federal Rules of Civil Procedure upon submission to prison authorities for forwarding to the party to be served). Because Mr. Shorty dated his notice of interlocutory appeal on May 27, 2007, it is clear that he failed to meet the date upon which his summary judgment opposition was due.

[4] See Docket No. 60; *see also* Docket No. 37 (requesting stay of this case until completion of criminal trial); Docket No. 38 (opposition); Docket No. 39 (Order denying stay); Docket No. 45 (motion for reconsideration); Docket No. 46 (Order denying reconsideration).

[5] *See* Docket Nos. 73, 74.

[6] *See State of Alaska v. Shorty*, 3AN-03-07796CR. Mr. Shorty was convicted in state court on April 20, 2007.

[7] *See* Docket No. 75.

[8] Mr. Shorty's affidavit in support of a further continuance, filed on March 3, 2008, at docket number 78, is now moot, because Mr. Shorty has still filed no response to the defendants' motion for summary judgment at this time.

2

## II. STANDARD OF REVIEW

In reviewing this summary judgment motion, the Court must view all evidence and draw all inferences therefrom in the light most favorable to Mr. Shorty, the nonmoving party.[9] Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[10] Further, the Court is mindful that it must liberally construe the pleadings of a self-represented plaintiff, and give the plaintiff the benefit of any doubt.[11]

## III. BACKGROUND FACTS

The facts, as alleged in Mr. Shorty's complaint, and viewed in the light most favorable to Mr. Shorty, are as follows: On July 26, 2003, Defendants Cottle and Witte, Anchorage Police Officers, used what the police call a "vascular restraint," and kicked Mr. Shorty, during his arrest. This caused Mr. Shorty to lose consciousness and to lose control over his bowels, and defecate on himself.

---

[9] *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

[10] *See* FED. R. CIV. P. 56(c).

[11] *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("Under § 1915A, when determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff. ... Additionally, in general, courts must construe *pro se* pleadings liberally."); *Jackson v. Carey*, 353 F.3d 750 (9th Cir. 2003) ("Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers."); *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999) (self-represented prisoner's claims must be liberally construed, and given the benefit of any doubt); *Ortez v. Washington County,* 88 F.3d 804, 807 (9th Cir. 1996).

3

After his arrest, Mr. Shorty was taken to the Anchorage Police Department, where he was not allowed to clean himself until he answered questions posed by Defendant Detective Kenneth McCoy. Because the state court judge found this conduct to "shock the conscience," the statements Mr. Shorty made at that time were suppressed at his criminal trial.[12] He was, nevertheless, convicted of resisting arrest, assaulting a police officer, and providing false information to the police.[13]

Mr. Shorty further alleges that the Municipality of Anchorage has established a custom and practice of allowing its officers to use the kind of "illegal actions" used by Officers Cottle and Witte, including the vascular restraint, particularly on Native males,[14] and that the Municipality has failed to train its officers in the use of appropriate practices and procedures.[15]

---

[12] *See* Docket No. 4, Exhibit 1 (Complaint) at 3; *see also* Document 51 at 6-7 (Defendants' memorandum in support of summary judgment); Docket No. 51-3 at 17 (Suppression hearing transcript at p. 154, where the trial judge states that it " it shocks my conscience to say well, we're going to talk to you now, and then beyond that he sat there for something like 34 minutes after the interview in his own excrement, so I'm going to grant the motion to suppress.").

[13] *See State of Alaska v. Shorty*, 3AN-03-07796CR (April 20, 2007 judgment of conviction); *see also* Docket No. 51-6 at 3, 4, 5 (Dec. 5, 2006 guilty verdicts).

[14] *See* Docket No. 4, Exhibit 1 at 5.

[15] *See id*. at 6.

4

Mr. Shorty alleges that he suffers from "anxiety and emotional distress, humiliation, physical injury, pain and suffering" as a result of the actions of the defendants.[16] However, he has submitted no claims of any physical injury.[17]

## IV.  LEGAL DISCUSSION

A.   <u>Collateral Estoppel</u>

The Defendants argue that Mr. Shorty's convictions for police assault and resisting arrest collaterally estop him from re-litigating whether the actions of Officers Witte and Cottle during the course of the arrest constituted excessive force.[18] They are correct.[19] And since "there was no constitutional violation of [Mr. Shorty's] rights, there is 'no basis for finding the officers inadequately trained.'"[20]

---

[16] *See id.* at 4.

[17] Although the paramedics arrived to assist Mr. Shorty, he declined medical attention when it was offered, and after his arrest, he sought no medical attention at Cook Inlet Pretrial Facility  *See* Docket No. 51-3 at 10, 14; Docket No. 51-9 at 1-2., 14

[18] *See* Docket No. 51 at 9.

[19] In addition, because Mr. Shorty has presented no evidence that he suffered any physical injury, he cannot prevail on his claim that he suffered "anxiety and emotional distress, humiliation, physical injury, pain and suffering" as a result of the force used by the defendants. *See Jackson v. Carey*, 353 F.3d 750 (9th Cir. 2003).

[20] *Long. v. City and County of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007) (citation omitted).

5

Under *Heck v. Humphrey*,[21] "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed."[22] The question is whether a successful section 1983 claim would "necessarily imply" or "demonstrate" the invalidity of the earlier conviction or sentence.[23]

The alleged excessive force in this case involved conduct for which Mr. Shorty was convicted. There is no genuine dispute regarding the fact that Mr. Shorty was convicted of resisting arrest and assaulting an officer, which occurred during the time the defendants were involved in using the force he alleges was excessive.[24] In fact, the issue was re-visited when Mr. Shorty made a motion for a judgment of acquittal notwithstanding the verdict on the assault and resisting arrest charges, which was denied.[25] The trial judge noted that "Shorty went bonkers and took them [Officers

---

[21] *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *compare Hernandez v. City of Los Angeles*, 624 F.2d 935 (9th Cir. 1980) (pre-*Heck* case, holding that collateral estoppel does not preclude a § 1983 claim of excessive force, where the use of excessive force by the police was not settled in the prior criminal proceeding).

[22] *Cunningham v. Gates,* 312 F.3d 1148, 1153 (9th Cir. 2002), *cert. denied*, 538 U.S. 960 (2003) (quoting *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996)).

[23] *See Heck*, 512 U.S. at 487.

[24] *See, e.g.*, Docket No. 51-5 (*State v. Shorty*, 3AN-S03-7796 CR, Information, Counts 3 & 4, filed 7/27/03); Docket No. 51-7 (Guilty Verdicts, including Counts 3 & 4).

[25] *See* Docket No. 51-7.

6

Cottle and Witte] down," and that he did not find the "force unreasonable under the circumstances."[26] Thus, because this issue has been litigated, collateral estoppel applies, and the defense of qualified immunity, as to the arrest, need not be reached.

B.     Qualified Immunity and the Interrogation

Mr. Shorty claims that Detective McCoy is liable for interrogating him while he was sitting in his own excrement.[27] Detective McCoy claims to be protected by the doctrine of qualified immunity, which provides that, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."[28]

As pointed out by Detective McCoy, qualified immunity should be denied to an officer who uses coercive interrogation techniques.[29] In *Martinez v. City of Oxnard*, for instance, the plaintiff alleged that an officer "brutally and incessantly questioned him, after he had been shot in the face, back, and leg and would go on to suffer blindness and partial paralysis, and interfered with his medical treatment while he was 'screaming in pain... and going in and out of consciousness.' [The officer] allegedly continued this 'interrogation' over Martinez's pleas for him to stop

---

[26] Docket No. 51-7 at 3.

[27] *See* Docket No. 4, Exhibit 1 at 5. Mr. Shorty only alleges that Detective McCoy and the Municipality violated his rights in regards to the interrogation.

[28] *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

[29] *See* Docket No. 51 at 12.

so that he could receive treatment."[30] Given these abhorrent allegations, the Ninth Circuit affirmed the district court's denial of qualified immunity to the officer.[31]

The Court agrees with Detective McCoy, however, that the cases in which qualified immunity for an officer's conduct during an interrogation has been denied "stand in sharp contrast to Mr. Shorty who was interrogated for less than an hour, was not threatened, and suffered only the minor discomfort of fouled clothes."[32]

The Court finds that the Alaska case, *Beavers v. State*, 998 P.2d 1040 (Alaska 2000), did not put Detective McCoy on notice that his conduct during the interview was unlawful. In that case, a minor defendant was threatened and excessively pressured by the police, until he ultimately confessed.[33] Mr. Shorty never confessed,

---

[30] *Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003) (on remand from Supreme Court), cert denied, 124 S.Ct. 2932 (2004).

[31] *See also Hope v. Pelzer*, 536 U.S. 730 (2002) (Qualified immunity did not protect officer who handcuffed inmate to a hitching post, leaving him exposed to the hot sun for seven hours, without adequate water or bathroom breaks, even though the allegations created novel factual circumstances).

[32] Docket No. 51 at 13; *see also* Docket No. 51-3 at 15 (Detective McCoy testified that the interview lasted "about 25 minutes.").

[33] *See Beavers*, 998 P.2d at 1048 ("Threat-induced confessions should be considered presumptively involuntary absent evidence affirmatively indicating that the suspect's will was not overcome by the threats.").

8

and was not threatened.[34] Nor did Detective McCoy attempt to prolong the interview in order to attempt to induce a confession. Instead, Detective McCoy testified that he interviewed Mr. Shorty for "about 25 minutes," and then, although normally a suspect is fingerprinted and photographed at the police station, McCoy "tried to get him to a bail hearing as quickly as possible and then on to jail," in order to clean up.[35]

The Court concludes that, although the statements made by Mr. Shorty during the interrogation were suppressed, there was insufficient guidance under the law to expect a "reasonable officer" to have known that it is ostensibly unconstitutional to interrogate a suspect under the circumstances of this case, prior to taking him to clean up.[36]

---

[34] *See* Docket No. 51-4 at 4, McCoy Affidavit ("I did not say anything to imply that [Mr. Shorty] would be sitting indefinitely in dirty clothes if he didn't speak to me. To the contrary, I made every effort to conduct the interview as quickly as possible.").

[35] Docket No. 51-3 at 15-16; *see also* Docket No. 51-4 at 3, McCoy Affidavit ("Because of the fact that Shorty was in fouled clothes, I decided to shorten the proceedings at APD headquarters so that he could be arraigned and transported to the jail in the most expeditious way. Usually, I would have the suspect finger-printed, photographed, and even take the DNA sample prior to arraignment and jail. In this case, I went back to the jail and obtained the DNA after Shorty had had the opportunity to clean up.").

[36] In addition, Mr. Shorty made no request, prior to the interview, to clean up. *See, e.g.*, Docket No. 51-4 at 3.

9

C.   Respondeat Superior

Mr. Shorty alleges that the Municipality of Anchorage is liable, under the doctrine of respondeat superior, for the actions of Detective McCoy in interrogating him.[37] Although Mr. Shorty may be able to state a tort claim in state court, the doctrine of respondeat superior does not apply in federal civil rights cases.[38] Because municipal liability must rest on the actions of the municipality, and not the actions of the employees of the municipality, a plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit.[39]

The Supreme Court has emphasized that "[w]here a plaintiff claims that the municipality ... has caused an employee to [violate plaintiff's constitutional rights], rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[40] Mr. Shorty has not claimed that it is the policy or custom of the Municipality to conduct interrogations

---

[37] *See* Docket No. 4, Exhibit 1 at 5.

[38] *See Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992); *Pembaur v. Cincinnati*, 475 U.S. 469, 478-79 (1986); *Rise v. Oregon*, 59 F.3d 1556, 1563 (9th Cir. 1995), *cert. denied*, 517 U.S. 1160 (1996); *Bouman v. Block*, 940 F.2d 1211, 1230 (9th Cir. 1991).

[39] *See Board of County Commissioners v. Brown*, 117 S.Ct. 1382, 1388 (1997); *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978); *Long. v. City and County of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007).

[40] *Brown*, 117 S.Ct. at 1389.

10

as his was conduced. Thus his claims involving respondeat superior must be dismissed.

## V. CONCLUSION

Mr. Shorty is collaterally estopped from litigating Claims 1, 2, 4, 5, and 6,[41] relating to the force used by the officers during his arrest. All of these claims must, therefore, be dismissed.

Qualified immunity protects Detective McCoy from liability for the allegations in Claim 3.

Because Mr. Shorty cannot bring a claim against the Municipality under the doctrine of respondeat superior for the actions of its officers, Claims 3 and 8 must also be dismissed.

Without prevailing on any claim, Mr. Shorty cannot receive punitive damages. Therefore, Claim 7 must be dismissed as well.

**IT IS HEREBY ORDERED:**

1. The defendants' motion for summary judgment is GRANTED.

2. Any outstanding motions are denied as moot.

---

[41] Claim 6, for emotional distress, must be dismissed whether related to the arrest or to the interrogation, as noted above. *See Jackson v. Carey*, 353 F.3d 750 (9th Cir. 2003).

11

Case 3:05-cv-00237-TMB   Document 80   Filed 03/31/08   Page 11 of 12

3. This case is DISMISSED with prejudice.

DATED this 31st day of March, 2008, at Anchorage, Alaska.

/s/TIMOTHY M. BURGESS
TIMOTHY M. BURGESS
U. S. DISTRICT JUDGE